UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
JEFFREY McKINLEY,

              Plaintiff,

      -against-

THE CITY OF NEW YORK; NYPD DETECTIVE
DAVID GUEVARA, Shield No. 7165;
NYPD POLICE OFFICER JAMES ROMANO,
Shield No. 1448; NYPD UNDERCOVER
OFFICER # 279; NYPD DETECTIVE JEROME
FOY, Shield No. 4344; NYPD DETECTIVE
KEVIN DARDZINSKI, Shield No. 6549;
DISTRICT ATTORNEY FOR NEW YORK
COUNTY A.D.A. [ASSISTANT DISTRICT
ATTORNEY] SUPERVISOR SHANDA STRAIN;
A.D.A. SARAH KHAN; A.D.A. MELANIE
SMITH; JOHN DOES; RICHARD ROES;

              Defendants.
- - - - - - - - - - - - - - - - - - -X

THIRD AMENDED COMPLAINT

Plaintiff Demands
Trial By Jury

16 Civ. 945 (AKH)

## PRELIMINARY STATEMENT

1.   This is a civil action in which the plaintiff, JEFFREY

McKINLEY, seeks relief for the defendants' violation of his

rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983; by the United States Constitution, including its

Fourth and Fourteenth Amendments, and by the laws and

Constitution of the State of New York.  The plaintiff seeks

damages, both compensatory and punitive, affirmative and

equitable relief, an award of costs and attorneys' fees, and

such other and further relief as this court deems equitable and

just.

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.    The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.    Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c).

## NOTICE OF CLAIM

6.   Plaintiff filed a timely Notice of Claim with the Comptroller of the City of New York on February 3, 2015, within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.   Plaintiff was at all times relevant herein a resident of the State of New York, County of Queens.  Plaintiff is African-American.  Plaintiff is poor, and lives at the margins of society.

8.   Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

3

9.  Defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH, and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK, and / or duly appointed and acting officers, servants, employees and agents of the New York County District Attorney's Office.  Defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH, and JOHN DOES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK and / or the New York County District Attorney's Office, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and / or by the powers bestowed upon them by the State of New York, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH, and JOHN DOES are sued individually.

10.  Defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279,

FOY, DARDZINSKI, STRAIN, KHAN, SMITH and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department and/or the New York County District Attorney's Office, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department / District Attorney's office under their command.   Defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH and RICHARD ROES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK / New York County District Attorney's Office, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department and / or by the powers bestowed upon them by the State of New York, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.   Defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH and RICHARD ROES are sued individually.

5

**STATEMENT OF FACTS**

Concerning the November 11, 2014 Incident

11. On November 11, 2014, approximately 5:00 p.m., Plaintiff was asked by a woman – on information and belief Defendant UNDERCOVER OFFICER # 279 – where she could find her next "fix" (i.e., drugs) at.

12. Plaintiff responded that he knew where she could do that, and that she would have to walk with Plaintiff to 10 Catherine Street, where Plaintiff could procure it for her.

13. Plaintiff went upstairs, and told the woman to wait in the staircase.

14. The woman waited in the staircase.

15. Plaintiff – who was suspicious of the woman – pretended to knock on someone's door (a random door, whose occupants, if any, he did not know), and then ran down another flight of steps.

16. Plaintiff emerged from the back door of the building, and walked from 10 Catherine Street to the parking lot of a nearby building located at 182 South Street.

17. Out of nowhere, and without saying a word to Plaintiff, Plaintiff was violently tackled over a short fence by a JOHN DOE plainclothes member of the NYPD - on information and belief one of Defendants GUEVARA, ROMANO, or UNDERCOVER OFFICER # 279 – causing dislocation to Plaintiff's left shoulder.

18. Two other JOHN DOES members of the NYPD - on

information and belief including Defendants GUEVARA, ROMANO, or UNDERCOVER OFFICER # 279 – arrived and told Plaintiff to stay on the ground, and rear-handcuffed Plaintiff with an excessive and punitive tightness.

19.   The JOHN DOES officers then picked Plaintiff up off of the ground, found Plaintiff's glasses that had been knocked off his face when he was tackled, and brought Plaintiff to a police transport van and loaded Plaintiff in.

20.   The JOHN DOES officers told Plaintiff to sit on the floor of the van because there were no seats, and Plaintiff did so.

21.   After a while at the location, the van left the scene.

22.   The JOHN DOE driver of the van drove it wildly, causing Plaintiff – who was still rear-handcuffed – to roll about in the van as it accelerated, braked, and turned, causing a sprain to Plaintiff's right hand, and causing the handcuffs to tighten further.

23.   Plaintiff complained to the JOHN DOES who were in the front of the van about the way they were driving, and the injury it had caused to his right hand.

24.   The JOHN DOES in the van responded to Plaintiff by telling him to be quiet, and continuing to drive the van wildly.

25.   The JOHN DOES in the van took Plaintiff to the NYPD 7th Precinct.

26. At the 7th Precinct Plaintiff was placed into a cell.

27. Plaintiff requested medical care three times at the 7th Precinct for his injured shoulder and wrist.

28. After the first request for medical care the JOHN DOE officer Plaintiff spoke to responded, in sum and substance, that Plaintiff was fine and still breathing, and that Plaintiff would live.

29. After the second request for medical care none of the JOHN DOES officers in the area responded to Plaintiff at all.

30. After the third request for medical care the JOHN DOES officers in the area told Plaintiff that he was going to court, and would have to ask again at central booking if he wanted medical care.

31. Plaintiff was held at the 7th Precinct until approximately 11:30 a.m. the next morning, and then brought to central booking.

32. At central booking Plaintiff was given a medical screening by a JOHN DOE.

33. Plaintiff informed the JOHN DOE medical screener that he needed medical attention.

34. Plaintiff was still not provided with any medical treatment.

35. Plaintiff was arraigned and charged with one count of fraudulent accosting under Penal Law § 165.30(2), and released on his own recognizance.

36.   Defendant GUEVARA is the deponent on the Criminal Court complaint, and alleges that he was informed by Defendant UNDERCOVER OFFICER # 279 that UNDERCOVER OFFICER # 279 handed Plaintiff $20 pre-recorded buy money and that Plaintiff promised in return to provide crack / cocaine, and that Plaintiff ran away from UNDERCOVER OFFICER # 279 and did not provide the crack / cocaine.   Defendant GUEVARA also falsely alleged that he was informed by Defendant ROMANO that Defendant ROMANO recovered the $20 pre-recorded buy money from Plaintiff.

37.   At a subsequent court date Plaintiff entered a plea of guilty, and was sentenced to time served.

Concerning the January 19-20, 2015 Incident

38.   On January 19, 2015, approximately 8:30 a.m., Plaintiff was asleep in his home at 388 Pearl St., # 9H, New York, NY.

39.   JOHN DOES Detectives from the NYPD, including Defendant FOY, arrived at Plaintiff's apartment, ostensibly with a warrant for another individual (who did not live with Plaintiff).

40.   The JOHN DOES Detectives wanted Plaintiff's help in finding the other individual.

41.   Plaintiff mentioned to Defendant FOY – based upon communications that his mother had received from a JOHN DOE Detective from the NYPD, on information and belief including

Defendant DARDZINSKI - that it was possible there was a warrant out for him as well, but that he was not sure.

42. Defendant FOY said he would run Plaintiff's name to see if there were any warrants for Plaintiff, and found a warrant that was purportedly for Plaintiff for a robbery charge.

43. Defendant FOY made a call – on information and belief to Defendant DARDZINSKI – and he, on information and belief, asked Defendant FOY to arrest Plaintiff on the warrant.

44. Plaintiff was then illegally arrested by the JOHN DOES Detectives, including Defendant FOY, for a warrant that never should have been issued.

45. At the time he was wrongfully arrested by Defendant FOY on January 19, 2015, there were no lawful bench, or other, warrants out for Plaintiff.

46. Agents of the New York County District Attorney's Office, including Defendants STRAIN, KHAN, and SMITH, had failed to prevent and / or correct the erroneously issued warrant despite being on explicit notice of the need to do so and the fact that it was issued based upon an errant, phantom indictment number (Indictment # 3297/2014) that was merely duplicative of indictment # 3686/2014 (which is the correct indictment number, stemming from an August 15, 2014 indictment).

47. The existence of the phantom indictment # was known to Defendant KHAN and her colleagues at the New York County District Attorney's office at least as far back as August 27,

2014, when it was discussed on the record in open court before Justice Sonberg in Part 42.

48. At the August 27, 2014 proceedings the following relevant colloquy occurred:

> THE COURT: My understanding is that there's not been an indictment filed at this point, correct, Ms. Khan?
>
> MS. KHAN: Your Honor, I actually on August 15th when the case was voted out handed the indictment to the warden who told me that another warden will walk it over to the Indictment Bureau on that day, so I am not sure why it is not in the file.
>
> COURT CLERK: I checked with the Indictment Bureau this morning, they still don't have an indictment, they still haven't received the indictment yet.
>
> THE COURT: You better try to trace down what happened to it because the Indictment Bureau doesn't have it and -- what crimes was Mr. McKinley charged?
>
> MS. KHAN: Robbery in the first degree and robbery in the second degree.
>
> (Tr. 2:7-22)
>
> ….
>
> THE COURT: One question before I hear from Ms. Chandler. The system spits out a list of defendant's open cases and among these is an indictment number which shows a warrant issued by the grand jury on August 15th for an indictment 3297 of 2014. You have any idea what that is about?
>
> MS. KHAN: I think that is this case, Your Honor.
>
> THE COURT: It is not the indictment number.
>
> COURT CLERK: What was the number?

11

THE COURT: 3297 of 2014.  Apparently he also has two open cases in Criminal Court, a domestic violence case.

COURT CLERK: It comes up no public record, Judge.

THE COURT: Thank you.  Anything else, Ms. Khan?

MS. KHAN: No, Your Honor. I will investigate as to where this indictment could have gone.

(Tr. 5:12-6:5)

49.  Despite Defendant KHAN's being put on explicit notice of the problem of the existence of the phantom indictment number, she never did anything to attempt to rectify it.

50.  On information and belief the Indictment Bureau is an office of the Court, that assigns indictment numbers to particular indictments upon being informed by an Assistant District Attorney that a grand jury has voted an indictment (also known as a "true bill").

51.  If not informed by an Assistant District Attorney that a grand jury has voted a particular indictment, the Indictment Bureau would not know to assign an indictment number to that indictment.

52.  An Assistant District Attorney's duties in interfacing with the Indictment Bureau, and concerning the proper assignment of indictment numbers to particular indictments, are purely administrative in nature, and do not involve any "legal

12

knowledge and the exercise of related discretion." <u>Van De Kamp</u>
<u>v. Goldstein</u>, 555 U.S. 335, 344, 129 S. Ct. 855, 862 (2009).
*See* also, <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993) ("A
prosecutor's administrative duties and those investigatory
functions that do not relate to an advocate's preparation for
the initiation of a prosecution or for judicial proceedings are
not entitled to absolute immunity.").

53.  It is possible that the phantom indictment # was also
discussed in open court on September 4, 2014 as well (this
transcript should be obtainable shortly).

54.  On January 8, 2015 Plaintiff's mother had received a
visit from Defendant DARDZINSKI, who told her that there was a
warrant for Plaintiff on the phantom indictment number.

55.  Defendant DARDZINSKI, on information and belief, was
the lead Detective assigned to Plaintiff's robbery case (which
was assigned indictment # 3686/2014) and to other criminal
matters concerning Plaintiff, who was at the time a juvenile.

56.  Defendant DARDZINSKI either knew, or should have known
– on January 8, 2015 and on January 19-20, 2015, and at all
points in between - that the warrant for Plaintiff on the
phantom indictment number was erroneous, because Defendant
DARDZINSKI was intimately involved in the investigation and
prosecution of the robbery case under indictment # 3686/2014,
and knew or should have known that there was no separate robbery
indictment (from August 15, 2014, or otherwise) outstanding for

13

Plaintiff.

57.   Plaintiff's criminal defense attorney – who works for one of New York City's public defender agencies - then called Defendant DARDZINSKI, who told her about the warrant.

58.   Plaintiff's criminal defense attorney told Defendant DARDZINSKI that that did not make any sense, and asked for the indictment number and the name of the Assistant District Attorney assigned to it.

59.   Detective DARDZINSKI responded that he did not have that information.

60.   This, on information and belief, was not true. Detective DARDZINSKI was aware of the existence of the warrant that had issued under the phantom indictment number on January 8, 2015 and on January 19-20, 2015, and at all points in between, and the warrant states on its face the indictment number in connection with which it was issued.

61.   Plaintiff's criminal defense attorney then reached out to Defendants SMITH and KHAN, who responded to her approximately a week prior to Plaintiff's wrongful arrest on January 19, 2015.

62.   Defendant SMITH told Plaintiff's criminal defense attorney that she knew nothing about the situation, but would look into it.

63.   Plaintiff was arrested on the wrongfully issued warrant by Defendant FOY, and then – compounding the original error in wrongfully arresting him – after wrongfully taking

14

Plaintiff to central booking, Plaintiff was then wrongfully brought by Defendant FOY and / or other JOHN DOES members of the NYPD to Rikers Island (where, *inter alia*, Plaintiff was subjected to a strip search) rather than being presented before a Judge so that the error could be corrected.

64. Plaintiff's criminal defense attorney spoke with Defendant FOY while he had Plaintiff at central booking.

65. Defendant FOY told Plaintiff's criminal defense attorney that since he had Plaintiff on a Supreme Court warrant, and since there was not a Supreme Court judge on duty, that he was turned away by the court clerk, and that he would be taking Plaintiff to Rikers Island.

66. Plaintiff's criminal defense attorney explained to Defendant FOY that an arrestee can be arraigned on a Supreme Court warrant in Criminal Court, and that, in any event, Justice Solomon (a Supreme Court Justice) was sitting.

67. Defendant FOY told Plaintiff's criminal defense attorney that there was nothing he could do, as long as representatives of the District Attorney's office were telling him that there was a valid arrest warrant, and wrongfully took Plaintiff to Rikers Island.

68. Plaintiff's criminal defense attorney called a supervising attorney at the Legal Aid Society, who was himself present in the Criminal Court arraignment part, to see if he could assist her in securing Plaintiff's freedom from the

wrongful imprisonment he was being subjected to.

69. On information and belief, the Legal Aid Society supervising attorney told a JOHN DOE supervisor at the District Attorney's Early Case Assessment Bureau (ECAB) about the situation, and an Assistant District Attorney in ECAB said that if it was confirmed that the warrant was issued in error, then the District Attorney's office would seek to have a cut slip issued for Plaintiff's release.

70. On information and belief the JOHN DOE ECAB supervisor reached out to Defendants KHAN and SMITH, who never got back to the JOHN DOE ECAB supervisor.

72. On the morning of January 20, 2015 Plaintiff's criminal defense attorney called and spoke with Defendant STRAIN, and explained the situation to her.

73. Plaintiff's criminal defense attorney had a series of telephone and email communications with Defendants STRAIN and KHAN throughout the day on January 20, 2015.

74. Neither of Defendants STRAIN or KHAN did anything to attempt to rectify the situation, and have Plaintiff be released from his wrongful imprisonment.

75. In one particularly stark example of indifference to the fact that Plaintiff was being wrongfully imprisoned, at 11:00 a.m. on January 20, 2015 Defendant KHAN emailed Plaintiff's criminal defense lawyer (cc:ing Defendants STRAIN and SMITH) and stated, "I recall there was some clerical issue

over the summer.  I spoke to the clerk back then, so not sure what is going on.  I'm on trial, but will look into it tomorrow."

76.  Plaintiff's property was confiscated from him at Rikers Island, and he never has received his property back.

77.  The erroneous indictment number was finally vacated, and Plaintiff released, by Judge Maxwell Wiley on January 20, 2015 at approximately 5:00 p.m.

78.  Although Plaintiff had been brought back to the New York State Supreme Court complex in lower Manhattan from Rikers on the morning of January 20, 2015, he was never brought before Judge Wiley, and was instead released from the back of the building, without explanation, pursuant to Judge Wiley's directive.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

79.  The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

80.  By their conduct and actions in unlawfully assaulting and battering plaintiff, violating rights to equal protection of plaintiff, falsely arresting and imprisoning plaintiff, unlawfully searching and seizing plaintiff, unlawfully violating

Plaintiff's home, converting Plaintiff's property, inflicting emotional distress upon plaintiff, abusing process against plaintiff, violating rights to due process of plaintiff, failing to intercede on behalf of the plaintiff, and in failing to protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of other defendants, defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH, DOES and/or ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

81.  As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

**SECOND CLAIM**[1]

**DEPRIVATION OF RIGHTS UNDER THE
UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

82.  The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

83.  By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants GUEVARA, ROMANO, UNDERCOVER OFFICER # 279, FOY, DARDZINSKI, STRAIN, KHAN, SMITH, and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

84.  As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

---

[1] By Order dated 11/10/16 (docket # 61, at page 3) this claim was dismissed.  Plaintiff retains his appellate rights related thereto.

### THIRD CLAIM[2]

**LIABILITY OF DEFENDANT THE CITY OF NEW YORK
FOR CONSTITUTIONAL VIOLATIONS**

85.  The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

86.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department and through the New York County District Attorney's office, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

87.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department and through the New York County District Attorney's office, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees, including members of the NYPD and the New York County District Attorney's office, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said

---

[2] By Order dated 11/10/16 (docket # 61, at page 3) this claim was dismissed.  Plaintiff retains his appellate rights related thereto.

defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

88.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the use of excessive force by members of the NYPD, including through the use of "rough rides" in police vehicles, the use of punitively and excessively tight handcuffing, and the failure to double-lock handcuffs.  The use of excessive force upon members of the public by members of the NYPD has disproportionately been meted out upon people of color, mostly upon young men of color.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

89.  At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such

policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

90.  At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the New York County District Attorney's office and through the individual defendants, had de facto policies, practices, customs and/or usages of indifference to the wrongful imprisonment of arrestees, and of failing to take action with alacrity to remedy instances of wrongful imprisonment after those instances are brought to their attention.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

91.  At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the New York County District Attorney's office and through the individual defendants, had de facto policies, practices, customs and/or usages of pervasive racial discrimination against people of color, and in particular against young men of color.  As an example, The Police Reform Organizing Project has recently released its 5th court monitoring report, entitled "We Harm People Everyday," that documents the NYPD's continuing abusive & discriminatory practices.  A summary of some of this report's significant

findings is as follows:

- From March 18th, 2016 through June 21st, 2016, PROP recorded information on **423 cases** presented in Manhattan, Brooklyn, Bronx, and Queens arraignments parts.
- Of the 423 cases seen, **378**, or **89.4%**, of defendants were people of color.

A summary of the findings from all 5 of PROP's court monitoring reports is as follows:

- From June 3, 2014 through June 21, 2016 PROP recorded information on 2,303 cases presented in Manhattan, Brooklyn, Bronx, and Queens criminal courts.  Here is a summary of the findings of PROP's five court monitoring reports is as follows:

  - Of the total 2,303 cases seen, 2,080, or 90.3%, involved New Yorkers of color.

The introduction to "We Harm People Everyday" states as follows:

On a regular basis, New York's district attorneys aggressively prosecute cases against black and brown people for engaging in mainly innocent or innocuous activities. On a regular basis, our city's courts devote their considerable resources to the administration of injustice, applying sanctions in hundreds, if not thousands, of cases where the charges involve, at worst, petty infractions and where the defendants are almost always people of color, some of whom live on the margins of society.

PROP had communicated that it called its report "We Harm People Everyday" because of their staff's conversation with an Assistant District Attorney who reached out to PROP to share

his/her concerns -- anonymously -- about the injustices that
he/she sees and encounters inside the criminal justice system.
The report's prologue recounts, among other things, that this
Assistant District Attorney told PROP that:

> ** "Cops lie all the time" to substantiate the charges
> that they bring against defendants.
>
> ** The NYPD conducts undercover marijuana buy & bust
> operations only in neighborhoods of color.
>
> ** "We harm people everyday. Everyday."

Such policies, practices, customs and/or usages are a
direct and proximate cause of the unconstitutional conduct
alleged herein.

92.  As a result of the foregoing, plaintiff was deprived
of his liberty and property, experienced injury, pain and
suffering, emotional injury, costs and expenses, and was
otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

93.  The plaintiff incorporates by reference the
allegations set forth in all previous Paragraphs as if fully set
forth herein.

94.  The conduct of the individual defendants alleged

herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers and/or employees of the New York County District Attorney's office, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

95.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### ASSAULT AND BATTERY

96.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

97.   By the actions described above, defendants did inflict assault and battery upon the plaintiff.   The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

98.  As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

### SIXTH CLAIM

**FALSE ARREST and FALSE IMPRISONMENT**

99.  The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

100. By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

101. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

## ABUSE OF PROCESS

102. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

103. By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

104. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM[3]

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

105. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

106. By the actions described above, defendants violated plaintiff's rights to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

107. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### NEGLIGENCE

108. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set

---

[3] By Order dated 11/10/16 (docket # 61, at page 3) this claim was dismissed.  Plaintiff retains his appellate rights related thereto.

forth herein.

109. The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

110. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM[4]

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

111. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

112. Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and

---

[4] By Order dated 11/10/16 (docket # 61, at page 3) this claim was dismissed. Plaintiff retains his appellate rights related thereto.

Constitution of the State of New York.

113. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM[5]

### CONSTITUTIONAL TORT

114. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

115. Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 11 and 12 of the New York State Constitution.

116. A damages remedy here is necessary to effectuate the purposes of §§ 6, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

117. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

---

[5] By Order dated 11/10/16 (docket # 61, at page 3) this claim was dismissed.  Plaintiff retains his appellate rights related thereto.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

a.   Compensatory damages;

b.   Punitive damages;

c.   The convening and empaneling of a jury to consider the merits of the claims herein;

d.   Costs and interest and attorney's fees;

e.   Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
          November 22, 2016

                                   /S/   Jeffrey A. Rothman
                                  JEFFREY A. ROTHMAN, Esq.
                                  315 Broadway, Suite 200
                                  New York, New York 10007
                                  (212) 227-2980
                                  Attorney for Plaintiff